Booth, Chief Justice,
delivered the opinion of the court:
The plaintiff is a railroad corporation, a common carrier of freight and passengers. This suit is the result of an acute difference between the parties with respect to the proper freight rates applicable to a shipment of Government property under the following facts:
In March 1922 plaintiff, in connection with the Baltimore & Ohio Railroad Company, transported for the War Department, Quartermaster Corj)s, from Curtis Bay, Maryland, to Osborn, Ohio, a consignment of bomb sights, Mark I-A, and bomb-release mechanisms. The transportation was accomplished, and the one issue in the case is the proper classification of the articles for the ascertainment of the applicable rate for freight charges.
The defendant insists that bomb sights and release mechanisms are ordnance stores, and that, inasmuch as they are not indexed in any classification by name, the applicable rate is ascertainable by reference to the rate on ordnance stores not otherwise indexed by name. Consolidated Freight Classification No. 2, at the time in effect, provides: “Ordnance stores n.o.i.b-n., in barrels, boxes, or crates ”, second class. The rate applicable to second-class shipments is $1.085 per hundredweight.
The plaintiff, on the other hand, resorting to the same official Consolidated Freight Classification, contends that, whereas the articles were not indexed 'by name, rule IT of the Classification Board is applicable. This rule is as follows:
“ When articles not specifically provided for, nor embraced in the classification as articles ‘n.o.i.b.n.’, are offered for transportation, carriers will apply the classification provided for articles which, in their judgment, are analogous. In such cases agents must report the facts to the proper officer *107 of the freight department in order that the rating applied may be verified and the necessary classification provided.”
The analogous article, the plaintiff insists, is a scientific instrument, and the classification provides as follows: “ Scientific instruments n.o.i.b.n., in barrels or boxes ”, one and one-half times first class. One and one-half times •the first-class rate is $1.87 per hundredweight.
There is no dispute as to the applicable rates for the transportation after the proper classification is determined. Therefore, the one issue involved in the case is whether the articles transported are analogous to or in fact scientific instruments.
A bomb sight, as the record discloses, is essentially an instrument of precision, functioning in harmony with the speed and fluctuating elevations of a bombing plane to point out accurately to the pilot the location and range of an object upon which a bomb is to be dropped. It is attachable to bombing planes and exacts technical training and experience to operate, and is, as the illustration in the record discloses, an instrument of many parts. While a separate unit from the bomb-release mechanism, it is the primary factor in making available the practical use to which the latter is devoted. What may or may not. fall within the generic designation “ scientific instruments ” is manifestly a question to be determined by the instrument itself, and not by the official or departmental classification of the article for the purposes of issue to the officers of the Army or Navy during its use. An article is not necessarily classified as ordnance stores for the purpose of ascertaining freight charges for its transportation because the department of the Government having jurisdiction over its custody and issue for use so treats it. United States v. Gulf Refining Co., 268 U.S. 542.
If the article in its makeup and functioning qualities is in fact an instrument which was intended to and does overcome the handicaps incident to another factor with which it is to be used in ascertaining range and distance, and thus the creator of the article utilizes scientific methods and processes to accomplish the purpose, it is difficult to classify the *108 same on any other basis than analogous, to say the least, to scientific instruments.
Confirmation of what we have just said is found in the fact that in August 1923, as a result of a request addressed to the Official Classification Committee by a railroad corporation, this committee in conjunction with the Federal Traffic Board provided a specific freight rating for bomb sights in boxes at one and one-half times the first-class rate, i.e., they were specifically provided for at the same rate provided' for scientific instruments n.o.i.b.n., and the rate thus established continues in effect to this day.
The defendant challenges the argumentative effect of the classification of August 1928, on the grounds that the bomb sights then adopted and used by the Government were a greatly improved and much more valuable article than those involved in this litigation. Added improvements to and decided advancements in detail of construction and functioning qualities of an instrument we think cannot warrant the classification of the pioneer one as ordnance stores and the latter one as analogous, if not identical, to scientific instruments. Both were adapted for the same field of operation, designed and intended to accomplish an identical purpose, and the old one was extensively used until the improved one supplanted it. The basis for classification is precisely the same in both instances. The evidence discloses that a bombing aeroplane, even at minimum speed, cannot hope to attain any reliable degree of accuracy in releasing a bomb to strike an object, without the assistance of bomb sights. These instruments, delicate in construction, are designed to utilize natural laws to enable an aeroplane pilot to accomplish with a greater degree of certainty what his Army or Navy service exacts of him, and what could not be nearly as well or as accurately done without them. Bomb sights and release mechanisms are distinct units; they form no permanent part of the aeroplane and do not in any way enter into its peculiar mechanism, and it seems to us that they are scientific instruments, or closely analogous thereto, in aid of, rather than strictly a part of ordnance, or ordnance stores, as those terms, may reasonably be defined. The record gives us no precise *109 idea wliat “ ordnance stores ”, as that term is used in the classification tariff, include. The bomb sights are assuredly not repair or substitute articles of ordnance and apparently stand alone as instruments of precision, available in ascertaining range and altitude when in use.
The record allows an inference that the articles transported by the plaintiff had not been specifically classified prior to 1923 for rating purposes by either the railroads or the Government because they were articles essential to the effective employment of bombing planes and came into existence along with the advent of this instrumentality as a weapon of war. Rule 17 of the Consolidated Freight Classification, by its terms, anticipated the situation presented by this case, and the defendant does not contend to the contrary. No other way is available to the parties in the fixing-of a lawful rate for a new article except the one of analogy to named articles in the classification and the rate fixed for their carriage. Rule 17 as quoted is not a new one; it has long existed and is clearly logical, and is resorted to in fixing rates where analogy to an existing article is necessary. What is here involved is strictly the rule of analogy. The defendant likens the article to ordnance stores; the plaintiff,, to scientific instruments. We think the analogy is much nearer and more definite to scientific instruments than to-ordnance stores, as to which latter term the record leaves us greatly in doubt.
The articles were stated on the bills of lading as “ sights,, bomb ”, and this misled the General Accounting Office into-fixing the freight rate upon the basis of an analogy to empty projectiles.
The plaintiff submitted to the Quartermaster Department of the Army its bill for the service, stating the total sum due as $1,142.45; i.e., at the rate of $1,245 per hundredweight,, plaintiff then believing that the articles transported were in. fact “ sights, bomb ”, and this amount was paid it. The General Accounting Office in auditing the disbursing officer’s-accounts allowed only $532.94 of the bill so paid', on the-theory of a classification of “ sights, bomb ”, and the release-mechanisms as ordnance stores. The plaintiff as per request. *110 refunded $600.60 of the sum theretofore paid it, and thereafter brought this suit.
We think under finding IX the plaintiff is entitled to a judgment for $1,114.12. Judgment in that amount is' awarded.
Whaley, Judge; Williams, Judge; Littleton, Judge; and GREen, Judge, concur.